**No. 22-1386**

# United States Court of Appeals
# for the Federal Circuit

ROKU, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

and

UNIVERSAL ELECTRONICS, INC.

*Intervenor.*

Appeal from the United States International Trade Commission in
Investigation No. 337-TA-1200.

## REPLY BRIEF OF APPELLANT

Jonathan D. Baker
DICKINSON WRIGHT RLLP
615 National Avenue, Suite 220
Mountain View, CA 94043
Phone:  (408) 701-6180

Michael D. Saunders
DICKINSON WRIGHT PLLC
607 W 3rd Street
Austin, TX 78703
Phone:  (512) 770-4208

Matthew J. Rizzolo
Brendan F. McLaughlin
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Phone:  (202) 508-4600

Andrew Thomases
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone:  (650) 617-4000

Matthew R. Shapiro
Michael A. Morales
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone:  (212) 596-9000

*Counsel for Roku, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-1386 |
| **Short Case Caption** | Roku, Inc. v. ITC |
| **Filing Party/Entity** | Roku, Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/15/2022

Signature: /s/ Matthew J. Rizzolo

Name: Matthew J. Rizzolo

FORM 9. Certificate of Interest

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Roku, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable            ☑    Additional pages attached

| | | |
|---|---|---|
| Franklin M. Smith, Dickinson Wright PLLC | Steven R. Daniels, Dickinson Wright PLLC | Craig Y. Allison, Dickinson Wright PLLC |
| Evi S. Li, Dickinson Wright PLLC | Caleb Green, Dickinson Wright PLLC | Dino Hadzibegovic, Dickinson Wright PLLC |
| Rebecca A. Tie, Dickinson Wright PLLC | Chad E. Eimers, Dickinson Wright PLLC | Mark H. Rogge, Dickinson Wright PLLC |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| Universal Electronics, Inc. v. Roku, Inc. | 8:20-cv-00701 | C.D. Cal. |
| In re reexam of U.S. Patent No. 10,593,196 to Arling | 90/019,073 | PTO |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## <u>Certificate of Interest – Additional Page</u>

**4. Legal Representatives, continued:**

| | | |
|---|---|---|
| Kenneth J. Dyer, Dickinson Wright PLLC | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ vii

TABLE OF ABBREVIATIONS ............................................................ xi

INTRODUCTION ............................................................................... 1

ARGUMENT ........................................................................................ 2

I.    UEI FAILED TO PROVE STANDING TO ASSERT THE '196 PATENT . 2

    A.    The Commission's New Argument Violates the Chenery Doctrine ..... 4

    B.    UEI Itself Agreed with Roku that the FID Was Based on the 2004 Agreement, Not the 2012 Assignments ............................................... 5

    C.    The Statements Concerning the 2012 Priority Applications Now Relied Upon by the Commission and UEI Were Not Part of the Final Determination ................................................................................... 6

        1.    The Supposed "Findings" Were Statements Made in an Interlocutory Context ................................................................ 6

        2.    The ALJ Did Not Incorporate the Commission's Prior Statements in his FID ............................................................... 6

    D.    UEI Did Not Carry Its Burden to Show the 2012 Assignments Conferred Standing ............................................................................ 9

II.    THE COMMISSION'S DOMESTIC INDUSTRY ANALYSIS DISREGARDS THE PLAIN LANGUAGE OF THE STATUTE AND LONGSTANDING PRECEDENT ............................................................ 11

    A.    The Commission Erred by Excusing UEI's Failure to Allocate its R&D/Engineering Investments to the Protected Articles ................. 13

    B.    The Commission Erred in Excusing UEI's Failure to Provide the Commission with Evidence Necessary to Evaluate the Substantiality of its Domestic Industry Investments ............................................... 16

III.    THE COMMISSION'S OBVIOUSNESS ANALYSIS FAILED TO PROPERLY APPLY THIS COURT'S LEGAL PRECEDENTS ............... 19

    A.    The Commission Erred in Rejecting the Prior Art Combination for Failing to Individually Teach the "Fundamental Tenet" of Two Control Devices .................................................................................. 20

    B.    The Commission's Motivation to Combine Analysis Was Legally Erroneous ........................................................................................... 22

**Table of Contents**
**(continued)**

C.    The Commission Failed to Correctly Apply this Court's Precedent Regarding the Nexus Requirement for Secondary Considerations.....25

1.    The Commission Failed to Correctly Apply this Court's Precedent That a Nexus is Presumed Only When the Products are Coextensive with the Claims................................................26

2.    The Commission Failed to Apply this Court's Precedent That There Must Be a Nexus to the Novel Claim Elements.............27

CONCLUSION ........................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Point of Care Inc. v. Epocal, Inc.*,
  666 F.3d 1299 (Fed. Cir. 2012) ..........................................................3

*Alacritech, Inc. v. Intel Corp.*,
  966 F.3d 1367 (Fed. Cir. 2020) ..........................................................9

*Align Tech., Inc. v. ITC*,
  771 F.3d 1317 (Fed. Cir. 2014) ..........................................................4

*Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*,
  713 F.3d 1369 (Fed. Cir. 2013) ........................................................24

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) ..........................................................10

*Certain Child Resistant Closures with Slider Devices Having A User
  Actuated Insertable Torpedo for Selectively Opening the Closures
  & Slider Devices Therefor*,
  Inv. No. 337-TA-1171, Comm'n Op. (Sept. 18, 2020) ......................18

*Certain Computers and Computer Peripheral Devices, and
  Components Thereof, and Products Containing the Same*,
  Inv. No. 337-TA-841, Comm'n Op. (Jan. 9, 2014)............................15

*Certain Earpiece Devices and Components Thereof*,
  Inv. No. 337-TA-1121, Comm'n Op. (Nov. 8, 2019) ........................12

*Certain Electronic Candle Products*,
  Inv. No. 337-TA-1195, Comm'n Op. (Sept. 13, 2021) ................13, 14

*Certain Electronic Imaging Devices*,
  Inv. No. 337-TA-850, Comm'n Op. (Apr. 21, 2014).........................12

*Certain Electronic Stud Finders, Metal Detectors, and Electrical
  Scanners*,
  Inv. No. 337-TA-1221, Comm'n Op. (Mar. 14, 2022) ......................12

vii

*Certain Male Prophylactic Devices*,
   Inv. No. 337-TA-546, Comm'n Op. (Aug. 1, 2007) .........................................17

*Certain Movable Barrier Operator Sys. & Components Thereof*,
   Inv. No. 337-TA-1118,
   Comm'n Order Vacating and Remanding Order No. 38 (Apr. 22,
   2020) ...........................................................................................................18

*Certain Multi-Stage Fuel Vapor Canister Systems and Activated
   Carbon Components Thereof*,
   Inv. No. 337-TA-1140, Initial Determination (Jan. 28, 2020) ..........................14

*Certain Multi-Stage Fuel Vapor Canister Systems and Activated
   Carbon Components Thereof*,
   No. 337-TA-1140, Comm'n Notice, 2020 WL 1700337 (Apr. 7,
   2020) ...........................................................................................................14

*Certain Printing & Imaging Devices & Components Thereof*,
   Inv. No. 337-TA-690, Comm'n Op. (Feb. 17, 2011) .......................................18

*Certain Video Game Systems and Wireless Controllers and
   Components Thereof*,
   Inv. No. 337-TA-770, Comm'n Op. (Oct. 28, 2013) .......................................17

*Chemours Co. FC, LLC v. United States*,
   443 F. Supp. 3d 1315 (Ct. Int'l Trade 2020) ....................................................9

*Daiichi Sankyo Co. v. Lee*,
   791 F.3d 1373 (Fed. Cir. 2015) .....................................................................21

*Finnigan Corp. v. ITC*,
   180 F.3d 1354 (Fed. Cir. 1999) .......................................................................8

*Fox Factory, Inc. v. SRAM, LLC*,
   944 F.3d 1366 (Fed. Cir. 2019) .....................................................................26

*Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*,
   605 F.3d 963 (Fed. Cir. 2010) .......................................................................16

*In re Fulton*,
   391 F.3d 1195 (Fed. Cir. 2004) ................................................................23, 24

*In re Huai-Hung Kao*,
  639 F.3d 1057 (Fed. Cir. 2011) ........................................................29

*InterDigital Commc'ns, LLC v. ITC*,
  707 F.3d 1295 (Fed. Cir. 2013) ..................................................15, 19

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)..........................................................................25

*In re Lee*,
  277 F.3d 1338 (Fed. Cir. 2002) ..........................................................7

*Lelo Inc. v. ITC*,
  786 F.3d 879 (Fed. Cir. 2015) .....................................................18, 19

*Medichem, S.A. v. Rolabo, S.L.*,
  437 F.3d 1157 (Fed. Cir. 2006) .........................................................21

*Microsoft Corp. v. ITC*,
  731 F.3d 1354 (Fed. Cir. 2013) ...................................................11, 12

*Nike, Inc. v. Adidas AG*,
  812 F.3d 1326 (Fed. Cir. 2016) .........................................................20

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) ...........................................................9

*Omni MedSci v. Apple, Inc.*,
  7 F.4th 1148 (Fed. Cir. 2021) .............................................................5

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed. Cir. 2007) .........................................................20

*Regents of the Univ. of New Mexico v. Knight*,
  321 F.3d 1111 (Fed. Cir. 2003) .........................................................11

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943)......................................................................*passim*

*Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.*,
  701 F. App'x 942 (Fed. Cir. 2017) ....................................................24

*In re Wertheim*,
  646 F.2d 527 (CCPA 1981) ................................................................10

**Statutes**

19 C.F.R. § 210.42(d) .........................................................................7

19 U.S.C. § 1337(a)(3).......................................................................12

28 U.S.C. § 1295(a)(6)........................................................................6

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '196 patent | U.S. Patent No. 10,593,196 [Appx648-674] |
| FID | Final Initial Determination (July 9, 2021) [Appx47-586] |
| Opinion | Commission Opinion (Nov. 10, 2021) [Appx1-46] |
| Standing Opinion | Commission Opinion on Standing (Mar. 3, 2021) [Appx26168-26190] |
| 2004 Agreement | Confidentiality & Invention Ownership Agreement between UEI and Mr. Brian Barnett [Appx50123] |
| 2012 Priority Applications | U.S. Patent Application No. 13/657,176; U.S. Patent Application No. 61/552,857; U.S. Patent Application No. 61/680,876, each related to the '196 patent |
| 2012 Assignments | Assignments between Brian Barnett and UEI of the 2012 Priority Applications [Appx23339-23340, Appx23342-23343, Appx23345-23346] |
| Roku | Roku, Inc. |
| UEI | Universal Electronics, Inc. |
| Commission | U.S. International Trade Commission |
| ALJ | Administrative Law Judge |
| Section 337 | 19 U.S.C. § 1337 |
| Subsection (C) | 19 U.S.C. § 1337(a)(3)(C) |
| HDMI | High-Definition Multimedia Interface |
| POSA | Person of Ordinary Skill in the Art |
| Chardon | U.S. Pub. Patent Appl. No. 2012/0249890 [Appx46450-46470] |
| Mishra | U.S. Pub. Patent Appl. No. 2001/0005197 [Appx50100-50112] |

## INTRODUCTION

Roku's Opening Brief identified the myriad legal errors in the Commission's analysis below.  In response, UEI and the Commission notably do not defend the substance of much of the Commission's analysis, instead offering shifting and alternative theories for why the Commission's findings should be affirmed.  On standing, the Commission now claims that despite the understanding of both private parties below, its decision was based on agreements that were not the subject of any testimony at the evidentiary hearing.  On obviousness, the Commission now offers brand-new reasons for finding Roku did not carry its burden.  But the Commission's post-hoc rationalizations are barred by the *Chenery* Doctrine, and in any event fail on their merits.

As to domestic industry, however, the Commission and UEI double down on the Commission's disregard of the statutory language and both Federal Circuit and Commission precedent.  The Commission even contends that it has the authority to "sometimes" require adherence to the legal standards Roku contends apply here, but that principles of administrative deference should excuse the Commission's failure to apply those standards to UEI's domestic industry.  The Commission's approach to domestic industry here is the definition of arbitrary and capricious, and its determination that UEI satisfied the domestic industry requirement should be reversed.

# ARGUMENT

## I.    UEI Failed to Prove Standing to Assert the '196 Patent

The standing issue here arose from a unique procedural context:

*UEI's Correction of Inventorship.*  Months after the complaint was filed, UEI corrected the '196 patent's inventorship, adding Brian Barnett as an inventor and executing an assignment between Barnett and UEI.  Appx50113-50122.

*Roku's Summary Determination Motion.*  At the close of fact discovery, Roku moved for summary determination of lack of standing, arguing that UEI failed to carry its burden to show that Barnett assigned his rights to the '196 patent when UEI filed the complaint.  Appx21499-21526.  The ALJ granted Roku's motion. Appx25576.  After UEI petitioned for review, the Commission reversed, finding that Roku had not carried its burden on summary determination of showing that UEI lacked standing.  Appx26168.

*UEI's Motion in Limine.*  Prior to the evidentiary hearing, UEI moved *in limine*, arguing that in reversing the ALJ, "the Commission has held as a matter of law that Mr. Barnett's 2012 Assignments conveyed ***all*** of his rights to the 196 Patent" to UEI.  Appx28429.  The ALJ denied UEI's motion, explaining that the Commission "did not find as a matter of law that Mr. Barnett's assignments conveyed his rights to the 196 Patent to UEI and did not find that UEI has standing to assert the 196 Patent."  Appx28159.  Thus, the standing issue remained in the

investigation—an issue on which UEI bore the burden. *See, e.g.*, *Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).

*The Evidentiary Hearing.*  At the hearing, Barnett testified that he believed that he had no ownership interest in the '196 patent after signing the 2004 Agreement.  Appx40019 (74:1-5).  Barnett did not, however, testify that the 2012 Priority Applications or the 2012 Assignments relating thereto transferred his interest in the continuation-in-part application that issued as the '196 patent to UEI—indeed, UEI introduced no evidence relating to the 2012 Priority Applications or the 2012 Assignments at the hearing.

*The FID and Commission Non-Review.*  In his FID, the ALJ favorably cited and relied on Barnett's testimony that he understood that he "had no ownership of the ['196] patent from the start of [his] employment" at UEI in 2004, and faulted Roku for not "present[ing] any evidence to the contrary, or indeed any new evidence at all."  Appx141.  Without citation to any other evidence and without acknowledging that UEI bore the burden of establishing standing, the ALJ stated that while the Commission previously "did not find as a matter of law that UEI has standing to assert the 196 patent," he now determined that UEI had standing. Appx140-141.  The Commission reviewed and adopted this portion of the FID without further explanation.  Appx10.

\* \* \*

3

The ALJ and the Commission acted in a manner that is arbitrary, capricious, and contrary to law. The Commission's standing-related determination should be reversed, or at a minimum vacated and remanded for further proceedings.

### A.    The Commission's New Argument Violates the *Chenery* Doctrine

As noted above, the Commission's Opinion simply affirmed the FID regarding standing, offering no further explication or analysis. Appx10. The FID, in turn, cited and relied upon Barnett's testimony regarding his rights under the 2004 Agreement. Appx141. Yet, here, the Commission states that it was "abundantly clear" that its determination regarding UEI's standing is derived from Barnett's 2012 Assignments—not the 2004 Agreement. ITC Br. 34. But as Roku has explained (Roku Br. 31-32), the *Chenery* Doctrine forbids the Commission from relying on this new rationale, as "[t]he reasoning offered by the Commission on appeal appears to be improper post hoc rationalization." *Align Tech., Inc. v. ITC*, 771 F.3d 1317, 1324 (Fed. Cir. 2014) (vacating ITC decision based on there being "no evidence in the record" below of the Commission's new argument raised on appeal).

Notably, the Commission itself now does not in any way defend its determination below that UEI has standing based on either the 2004 Agreement or Barnett's testimony—the latter being the only actual evidence the FID cites. *See* ITC Br. 30-35. Because the Commission left this basis for the ruling below undefended, this Court should reverse.

## B.    UEI *Itself* Agreed with Roku that the FID Was Based on the 2004 Agreement, Not the 2012 Assignments

Intervening in this appeal, UEI echoes that it is "unmistakable" that the Commission's standing determination was "based on its findings regarding the 2012 Barnett assignments," UEI Br. 23, but UEI's position is 180-degrees from what it espoused below.  UEI could not have been clearer in opposing Roku's Petition for Review of the FID, stating that "***as the ID correctly holds***, the unrebutted evidence showed that, in 2004, Mr. Barnett 'hereby agree[d]' that his inventions were the property of the company, and further shows that both Mr. Barnett and UEI mutually viewed then and view now that agreement to have been a then-present assignment." Appx27469; *see also* Appx27468.

UEI even continues here to make a half-hearted argument that the 2004 Agreement was a present-tense, express grant of patent rights to UEI.  UEI Br. 28-30.  UEI is incorrect—this Court's recent decision in *Omni MedSci v. Apple, Inc.* is directly on point.  *See* 7 F.4th 1148, 1153 (Fed. Cir. 2021); *see also* Roku Br. 25-31.  The 2004 Agreement was a mere promise to assign in the future—it neither conferred any rights in the '196 patent to UEI nor granted UEI standing to assert the patent.

**C.** **The Statements Concerning the 2012 Priority Applications Now Relied Upon by the Commission and UEI Were Not Part of the Final Determination**

    **1.** *The Supposed "Findings" Were Statements Made in an Interlocutory Context*

The Commission's newfound claim that it is "abundantly clear" that its Final Determination relied on the 2012 Assignments (ITC Br. 34) lacks merit. The Commission now relies on statements it made in an interlocutory context—specifically, the Commission's reversal of the ALJ's grant of *Roku's* motion for summary determination—not in a final determination. This Court has jurisdiction to review only the Commission's "final determinations," 28 U.S.C. § 1295(a)(6), and the Standing Opinion reversing the grant of summary determination was undisputedly not a final determination.

Prior to the evidentiary hearing, the ALJ recognized the Standing Opinion's interlocutory context by rejecting UEI's motion *in limine* that the Commission had unequivocally spoken on the standing issue. *See* Appx28429, Appx28158-28159. The ALJ explained that the Commission "did not find as a matter of law that Mr. Barnett's assignments conveyed his rights to the 196 Patent to UEI and did not find that UEI has standing to assert the 196 Patent." Appx28159.

    **2.** *The ALJ Did Not Incorporate the Commission's Prior Statements in his FID*

The Commission and UEI argue that the FID relied upon the 2012 Assignments when the FID stated there was "no basis to disturb the Commission's

6

substantive conclusions" from the Standing Opinion regarding summary determination.  ITC Br. 32; UEI Br. 25.  But the ALJ's minimal analysis and citation of evidence unrelated to the 2012 Assignments show that the FID did not properly incorporate these statements.  As an administrative agency, the Commission "must not only assure that the requisite findings are made, based on evidence of record, but must also explain the reasoning by which the findings are deemed to support the agency's conclusion."  *See In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002).  And the Commission's own rules required that the FID state its "findings (with specific page references to principal supporting items of evidence in the record) and conclusions and the reasons or bases therefor necessary for the disposition of all material issues of fact, law, or discretion presented in the record."  19 C.F.R. § 210.42(d).  The Commission's new argument here attempts to sidestep its own rules.

The Commission acknowledges, as it must, that aside from the ALJ's three-sentence discussion of Barnett's testimony, neither the Commission nor the ALJ set forth the requisite substantive standing analysis in a final determination—whether in the FID or the Opinion.  ITC Br. 13-14, 32.  Instead, the Commission argues a daisy-chain: the FID "adopted the Commission's substantive conclusions on review of Order No. 40," and the Commission then adopted the FID in its Opinion.  ITC Br. 32 (quotations and citations omitted).  But the FID states "there is no basis to disturb

the Commission's substantive conclusions" only after citing Barnett's testimony about his understanding of his ownership of IP rights from the time he began employment at UEI in 2004. The FID's citation to Barnett's testimony makes logical sense only if *the ALJ's standing determination was based on the 2004 Agreement—*not the 2012 Assignments.

And contrary to the Commission's implication (*see* ITC Br. 32), Roku's position here and its FID petition for review are fully consistent. In its petition for review, Roku explained that the FID's erroneous standing finding was based on the 2004 Agreement and Barnett's testimony, and that "the ID fails to make any factual findings regarding the manner in which rights in the '196 patent were purportedly conveyed under the 2012 Barnett Assignments." Appx27361-27364. Roku, however, then addressed the substance of UEI's arguments concerning the 2012 Assignments because when reviewing the FID, the Commission could have performed its own substantive standing analysis regarding the 2012 Assignments. Had the Commission done so, and Roku had not raised this issue in its petition for review, Roku would have waived its appeal rights. *See Finnigan Corp. v. ITC*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) (all issues not raised in a petition for review are waived on appeal). But because the Commission merely adopted the FID, the preservation issue became moot.

The fact that the parties here disagree over the FID's basis—and the fact that both UEI and Roku understood the decision to have been based on the 2004 Agreement—shows that the FID did not provide the clarity required under the APA. *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1383, 1385 (Fed. Cir. 2016) (remanding an issue where the PTAB did not explain why it "accepts the prevailing argument"); *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1371 (Fed. Cir. 2020). The Commission "must make the necessary findings and have an adequate evidentiary basis for its findings [on standing]" and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Chemours Co. FC, LLC v. United States*, 443 F. Supp. 3d 1315, 1321 (Ct. Int'l Trade 2020) (citing *Nuvasive*, 842 F.3d at 1382) (cleaned up). At a minimum, the Commission's newfound reliance on the 2012 Assignments in its brief, coupled with the FID's lack of a clear explanation, warrant a remand to the Commission for a full analysis of standing in the first instance.

### D.   UEI Did Not Carry Its Burden to Show the 2012 Assignments Conferred Standing

To the extent that this Court considers the merits of the Commission and UEI's claim that the 2012 Assignments conferred standing—and it need not and

should not, for the reasons set forth above[1]—UEI failed to carry its burden below, and any purported standing finding based on the 2012 Assignments was legal error.

The FID's only substantive statement regarding the 2012 Assignments is the ALJ's acknowledgement that the Commission, in its interlocutory Standing Opinion, found that there is "no dispute that the 2012 Barnett Assignments expressly operate as a present conveyance . . . of Mr. Barnett's entire right, title, and interest in the invention disclosed in each Priority Application." Appx140. This statement, even accepted as true, is insufficient as a matter of law to show that UEI had standing to assert the '196 patent based on the 2012 Assignments.

There is no dispute that the 2012 Assignments cover "continuations"—and do not mention "continuations-in-part"—and that the '196 patent is a *continuation-in-part* of the 2012 Priority Applications. Continuations-in-part, by definition, add new matter to the parent applications previously filed. *In re Wertheim*, 646 F.2d 527, 536 (CCPA 1981). Thus, UEI needed to prove that the invention claimed in the '196

---

[1] UEI is incorrect that Roku waived the ability to address the 2012 Assignments' substance by not discussing them in its opening brief. UEI Br. 24. Waiver of an issue not raised in a party's opening brief is "not governed by a rigid rule but may as a matter of discretion not be adhered to where circumstances indicate that it would result in basically unfair procedure." *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) (citations omitted). Here, where both UEI and Roku understood the ALJ to have based his standing decision on the 2004 Agreement, and where the Commission made no statement to the contrary in the Opinion, it would be unfair to penalize Roku on appeal here for not anticipating the Commission's post-hoc rationalization.

patent was the same as that disclosed in the 2012 Priority Applications, and it simply did not do so. UEI mistakenly claims that this Court held in *Regents of the Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1119-20 (Fed. Cir. 2003), that the assignment of "continuations" *necessarily* encompasses "continuations-in-part." UEI Br. 27-28. But in *UNM*, the inventors agreed to "sell, assign, and transfer . . . all right, title, and interest" in their inventions, any patents that may issue from those inventions, and "in and to any and all divisions, reissues, continuations, ***and extensions thereof***." *Id.* at 1120. The Court explained that the various agreements' "broad language" was "more than sufficient" to obligate the inventors to assign the continuation-in-part application to UNM. *Id.* Because UEI identified no "broad language" in the 2012 Assignments equivalent to "and extensions thereof," *UNM* is inapposite.

\* \* \*

The Commission's finding that UEI has standing to assert the '196 patent should be reversed.

## II. The Commission's Domestic Industry Analysis Disregards the Plain Language of the Statute and Longstanding Precedent

Roku does not dispute that UEI has invested substantially in its QuickSet *software*. But as this Court explained in *Microsoft Corp. v. ITC*, "that is not enough under the statute. Section 337 . . . unmistakably requires that the domestic company's substantial investments relate to actual 'articles protected by the patent.'"

11

731 F.3d 1354, 1361-62 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1337(a)(2), (3)). Here, there is no question that UEI's QuickSet software does not practice the '196 patent, and therefore the only articles protected by the patent are certain Samsung televisions.

The plain language of 19 U.S.C. § 1337(a)(3) requires that UEI must show that its domestic industry investments are (1) made "with respect to" the Samsung televisions, and (2) of "substantial" quantity when measured in the context of these patent-practicing products. As the Commission has long held,[2] this "with respect to" language—which applies equally to each subsection of 19 U.S.C. § 1337(a)(3)—requires that the complainant allocate its investments to the articles protected by the patent, regardless of whether it is relying on investments in plant/equipment, labor/capital, or R&D/engineering. And both the Commission and this Court have repeatedly explained that the domestic industry inquiry is a fact-intensive one,

_____

[2] *E.g.*, *Certain Electronic Imaging Devices*, Inv. No. 337-TA-850, Comm'n Op. at 95-96 (Apr. 21, 2014) (finding that allocating investments under subsection (C) "to the articles protected by" the asserted patents "comports with long-standing Commission practice"); *Certain Earpiece Devices and Components Thereof*, Inv. No. 337-TA-1121, Comm'n Op. at 18 (Nov. 8, 2019) ("[I]n order to meet the domestic industry requirement of paragraph 337(a)(3) before the ALJ, Bose needed to provide an allocation of its investments relevant to the subset of domestic industry products that practice the '384 patent and to show that these investments are significant or substantial."); *Certain Electronic Stud Finders, Metal Detectors, and Electrical Scanners*, Inv. No. 337-TA-1221, Comm'n Op. at 50-51 (Mar. 14, 2022) (reaffirming that allocation of investments to patent practicing articles is required under each subsection, as opposed to "aggregating investments that *are* protected by a particular patent with investments in articles that *are not* protected by that patent").

requiring an examination of the relied-upon investments in the context of the protected articles. Here, to measure the quantitative substantiality of those UEI R&D investments to the Samsung televisions, that inquiry necessarily required looking at Samsung's investments in those televisions—information UEI originally sought, but ultimately never introduced at the evidentiary hearing.

In finding that (1) UEI need not allocate its investments to Samsung's televisions, and (2) no investments in Samsung's televisions other than UEI's QuickSet investments should be considered as part of the substantiality analysis, the Commission erred by ignoring both the statute and its own longstanding precedent; thus, its determination should be reversed.

### A.    The Commission Erred by Excusing UEI's Failure to Allocate its R&D/Engineering Investments to the Protected Articles

The Commission's and UEI's position that UEI need not allocate its domestic industry investments to the protected articles is flatly contradicted by Commission practice and precedent going back many years. Just last year, in *Certain Electronic Candle Products*, the Commission put it succinctly: "[w]hen a complainant has investments or employment that are not solely directed to the domestic industry articles, the Commission requires that the complainant *allocate* the portion of those investments that are attributable to *those domestic industry products*." Inv. No. 337-TA-1195, Comm'n Op. at 8 (Sept. 13, 2021) (citing *Earpiece Devices*, Inv. No. 337-TA-1121, Comm'n Op. at 18).

13

Nonetheless, both the Commission and UEI appear to argue that a complainant's showing of a "nexus" between the domestic industry investments and the asserted *patent* can substitute for the required allocation between the investments and the *protected article*. *See* ITC Br. 43; UEI Br. 35.[3] This position is diametrically opposed with a Commission opinion issued just two months ago in *Certain Electronic Candle Products*—where the Commission explained that for R&D/engineering investments under subsection (C), "there must be a nexus between the domestic investments and the exploitation of the asserted patents, *in addition to a showing that those investments relate to the protected DI articles*." Inv. No. 337-TA-1195, Comm'n Op. at 8 (Oct. 4, 2022).

The Commission's conflation of the "nexus" and allocation requirements is legal error. The nexus requirement is derived from the statutory language "in its exploitation"—the relationship between the substantial investments in R&D/engineering and the patent at issue. The need for an allocation, on the other hand, is derived from the statutory requirement that the domestic industry

---

[3] Both the Commission and UEI confusingly cite to and rely on an ALJ initial determination from *Certain Multi-Stage Fuel Vapor Canister Systems and Activated Carbon Components Thereof*, Inv. No. 337-TA-1140 (Jan. 28, 2020), which was cited by the FID here. Appx188. But this decision's relevant part was later effectively vacated by the Commission when it reviewed and took no position on the ALJ's domestic industry analysis relating to subsection (C). *See* Inv. No. 337-TA-1140, Comm'n Notice, 2020 WL 1700337 (Apr. 7, 2020).

investments are made "with respect to" the protected articles. This Court confirmed as much:

> [t]he "substantial investment in exploitation, including engineering, research and development, or licensing" must be "with respect to the articles protected by the patent," which means that the engineering, research and development, or licensing activities must pertain to products that are covered by the patent that is being asserted. Thus, . . . research and development or licensing activities referred to in subparagraph (C) must also exist with respect to articles protected by the patent . . .

*InterDigital Commc'ns, LLC v. ITC*, 707 F.3d 1295, 1297-98 (Fed. Cir. 2013).

*InterDigital* therefore unambiguously requires the Commission to determine whether UEI made substantial investments "with respect to" certain Samsung televisions—the articles protected by the patent.[4] Because UEI relies in large part upon overall QuickSet software investments to show substantial investments "with respect to" the Samsung televisions, and because there is no dispute that QuickSet software is used with and integrated into other articles not protected by the patent (for example, Sony televisions and Microsoft Xbox consoles, *see* Appx785 ¶ 15),

---

[4] Although the Commission claims that this Court in *InterDigital* "found no such allocation requirement" (ITC Br. 40), this is unremarkable—the allocation question was not presented to the Court in that case. Moreover, the 2013 *InterDigital* decision preceded the Commission's practice of formally requiring complainants relying on subsection (C) to satisfy the domestic industry requirement's technical prong. *See Certain Computers and Computer Peripheral Devices, and Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-841, Comm'n Op. at 36-40 (Jan. 9, 2014). Of course, if there was no patent-practicing product identified, there would be no reason to allocate investments to that product.

UEI's overall QuickSet software investments are not necessarily "with respect to" Samsung televisions. Under Commission precedent—and by the Commission's own admission, ITC Br. 44—such investments must therefore be allocated to the Samsung televisions.

"Where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." *Fred Beverages, Inc. v. Fred's Cap. Mgmt. Co.*, 605 F.3d 963, 967 (Fed. Cir. 2010). That is precisely what the Commission has done here—departed from well-established precedent requiring complainants to allocate their domestic industry investments to protected articles. The Commission's statements that it should be granted deference (ITC Br. 42) and that it "sometimes requires allocations, on a case-by-case basis" (ITC Br. 44)—but without setting forth the standard for when it will deem that required or not—is a tacit acknowledgment of arbitrary and capricious behavior. The Court should reverse the Commission's decision.

**B.    The Commission Erred in Excusing UEI's Failure to Provide the Commission with Evidence Necessary to Evaluate the Substantiality of its Domestic Industry Investments**

As an independent error, the Commission did not evaluate the substantiality of UEI's QuickSet-related investments in the context of other investments in "the *articles* protected by the patent." Here, the only investments the ALJ and Commission evaluated were those UEI made in *non-practicing, intangible software*,

without considering them in the context of other investments made in the actual articles protected by the patent—the Samsung televisions. Both UEI and the Commission claim that these UEI investments are the only ones that must be considered.

But the Commission has explained repeatedly that evaluation of the economic prong requires "an examination of the facts in each investigation, *the article of commerce*, and the realities of the marketplace." *Certain Male Prophylactic Devices*, Inv. No. 337-TA-546, Comm'n Op. at 39 (Aug. 1, 2007). The Commission has also explained that whether an investment is "substantial" is context-dependent, and assessments should be made in relation to the protected articles. *Certain Video Game Systems and Wireless Controllers and Components Thereof*, Inv. No. 337-TA-770, Comm'n Op. at 45 (Oct. 28, 2013).

The Commission's decision below ignored both the reality of the marketplace and the protected article at issue. On appeal, the Commission now argues that evaluating UEI's alleged domestic industry investments in the context of investments made in the protected article *by the manufacturer* of the article—Samsung—would have "the effect of punishing" those who are successful in licensing their intellectual property. ITC Br. 47. Not so—Roku does not contend that UEI or a similarly situated complainant could *never* satisfy the domestic industry requirement, and holding a complainant to its burden is not "punishment"—

it is part and parcel of invoking Section 337.[5] Here, *in this case*, UEI failed to carry its burden because it did not marshal appropriate evidence. UEI had every opportunity to quantify Samsung's investments in the protected articles to provide the necessary context for a substantiality analysis—UEI even served a subpoena on Samsung, but simply didn't pursue enforcement. By excusing UEI's failure, the Commission rewarded UEI, and punished Roku.

This Court and the Commission have explained that there must be information in the record sufficient to perform "an assessment of the relative importance of the domestic activities" to the protected article—and that importance must be measured quantitatively. *Lelo Inc. v. ITC*, 786 F.3d 879, 883-84 (Fed. Cir. 2015); *Certain Printing & Imaging Devices & Components Thereof*, Inv. No. 337-TA-690, Comm'n Op. at 31 (Feb. 17, 2011) (recognizing that "the magnitude of the investment cannot be assessed without consideration of the nature and importance of the complainant's activities to the patented products in the context of the marketplace or industry in question").[6] Absent evidence in the record allowing for

---

[5] The ITC's argument also makes little sense in this context, as UEI is not relying on licensing activities.

[6] *See also Certain Movable Barrier Operator Sys. & Components Thereof*, Inv. No. 337-TA-1118, Comm'n Order Vacating and Remanding Order No. 38 at 5 (Apr. 22, 2020) ("Order No. 38 does not appropriately evaluate the relative significance of [complainant's] investments in labor and capital or plant and equipment, as opposed to their absolute value"); *Certain Child Resistant Closures with Slider Devices Having A User Actuated Insertable Torpedo for Selectively Opening the Closures & Slider Devices Therefor*, Inv. No. 337-TA-1171, Comm'n Op. (Sept. 18, 2020).

such a quantitative analysis of the importance of UEI's QuickSet investments to the protected Samsung televisions, UEI could not carry its burden to satisfy the domestic industry requirement.

Finally, this Court's opinion in *InterDigital* does not, as the Commission contends (ITC Br. 46), undermine Roku's argument.  First, there was no dispute in *InterDigital* that the licensed technology was incorporated into highly important communications standards.  *InterDigital*, 707 F.3d at 1298-99.  Second, there was no dispute that InterDigital had made substantial investments in licensing.  *Id.* at 1299 (noting that "there is no argument to the contrary").  And *InterDigital* also preceded this Court's 2015 opinion in *Lelo*, where the Court expressly clarified that Section 337 requires a quantitative analysis in order to determine whether a complainant's investments are significant or substantial in the context of the protected articles.  786 F.3d at 883-85.

*    *    *

The Commission's finding that UEI satisfied the economic prong of the domestic industry requirement should be reversed.

## III.    The Commission's Obviousness Analysis Failed to Properly Apply This Court's Legal Precedents

As Roku's opening brief explained, Chardon discloses a system for remotely controlling devices using CEC if the device is determined to be responsive to CEC commands, or if not, using IR via an IR blaster.  Roku Br. 16.  Thus, Chardon

discloses each limitation of claim 1 of the '196 patent, except that Chardon's IR commands are transmitted through an IR blaster instead of through an IR remote control. *Id.* However, Mishra discloses the well-known technique of relaying IR codes from a set-top box to a device through a remote control. *Id.* at 16-17. Given the known problems with IR blasters, a POSA would have been motivated to replace Chardon's IR blasters with Mishra's technique of relaying IR codes through a remote control. *Id.* at 18. Thus, the combination of Chardon and Mishra renders obvious the claimed invention. The Commission's non-obviousness determination was based on several legal errors, which the Commission and UEI fail to refute.

### A.    The Commission Erred in Rejecting the Prior Art Combination for Failing to Individually Teach the "Fundamental Tenet" of Two Control Devices

The Commission improperly rejected the Chardon-Mishra combination because neither reference *individually* discloses the alleged "fundamental tenet" of claim 1—a "system configured to choose between two different control devices to trans[m]it commands over different pathways." Roku Br. 44-45. This was legal error. The relevant inquiry is whether a POSA would have had a reason to make the combination and a reasonable expectation of success—not whether each individual reference discloses each claim limitation. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007); *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1335 (Fed. Cir. 2016) ("A claimed invention may be obvious even when the prior art does not teach each

claim limitation"). And, when examining the *Graham* factors, "the prior art must be considered as a whole for what it teaches." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1166 (Fed. Cir. 2006). The Commission and UEI embrace this legal error, repeating the same, erroneous "fundamental tenet" analysis the Opinion employed. ITC Br. 53; UEI Br. 46-47.

Seeking refuge in the substantial evidence standard of review, the Commission and UEI characterize this issue as a "factual" finding—arguing that the Commission's conclusions are entitled to deference because the Commission credited UEI's expert's conclusory testimony that control via "two different devices" is a "fundamental tenet of claim 1." However, "[a]n agency abuses its discretion when its decision is based on an erroneous interpretation of the law." *Daiichi Sankyo Co. v. Lee*, 791 F.3d 1373, 1379 (Fed. Cir. 2015). Here, neither the Commission nor UEI cite any legal authority justifying the Commission's "fundamental tenet" analysis. Accordingly, the Commission erred in relying on this legally erroneous "fundamental tenet" analysis to reject Roku's *prima facie* obviousness argument. Appx29.

The Commission also attempts to introduce a new argument supporting its non-obviousness determination: "combining Chardon with Mishra's remote control does not accomplish the claimed invention" because the multi-media gateway remains in control even if commands are routed through a remote control. ITC Br.

21

54-55.  However, the *Chenery* Doctrine precludes affirmance based on this new argument, as neither the Opinion nor FID contained any such finding, and such a conclusion plainly requires fact finding that the Commission did not perform.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").  This new argument also fails on the merits, as the Commission cites no language in claim 1 that precludes the "first media device" (Chardon's multi-media gateway) from participating in control of target devices when it sends second data to configure the remote control.  Indeed, the Commission's new claim interpretation would be inconsistent with its determination that certain Roku products infringed claim 1 by merely relaying IR codes through the remote control.  Appx23.

## B.    The Commission's Motivation to Combine Analysis Was Legally Erroneous

The Commission and UEI characterize the Commission's motivation to combine analysis as simply finding that Roku's obviousness argument was not sufficiently persuasive to satisfy the clear and convincing standard.  ITC Br. 56-57; UEI Br. 51-52.  However, under *Chenery*, the Commission is bound by the specific rationale found in the Commission's Opinion.  As Roku's opening brief explained, the Opinion contained several clear legal errors, and the Commission's and UEI's

briefs fail to rebut Roku's showing that the Commission's non-obviousness determination was based on those errors.

First, the Commission's finding of no motivation to combine Chardon and Mishra was based on a legally flawed "teaching away" analysis—the references did not criticize, discredit, or otherwise discourage use of the claimed approach, contravening this Court's holding in *In re Fulton*. Roku Br. 49. The Commission and UEI provide no response to this argument.

Second, the Commission misapprehended Roku's obviousness theory for the Chardon-Mishra combination, finding the combination would be "duplicative" and "wasteful" because it would involve "add[ing] a second IR command path," citing UEI's expert's testimony. Appx30; Roku Br. 50. However, Roku's argument has always been that Mishra's IR relaying technique would *replace* Chardon's flawed IR blasters. Roku Br. 50 (citing Appx27033; Appx27721-27722; Appx40320 (940:7-942:15)). Dr. Russ testified, and Roku argued to the Commission, that the combination would be implemented via a "*substitution*," *i.e.*, "*[r]eplacing* Chardon's use of IR blasters in a first media device with Mishra's technique for relaying IR codes through a remote control." Appx40320-40321 (941:25-942:12, 944:19-946:13); Appx27033. In response, the Commission does not even address this issue. Accordingly, the Commission's misapprehension of Roku's argument

requires reversal. *Shinn Fu Co. of Am., Inc. v. Tire Hanger Corp.*, 701 F. App'x 942, 945-46 (Fed. Cir. 2017).

Third, the Commission legally erred in finding no motivation to replace Chardon's IR blasters with Mishra's relaying of IR codes through a remote control on the grounds that IR blasters have "some advantages," that "their alleged problems" can be solved "through other means," and that it would have been "more complicated" to use "two controlling devices." Appx30. Neither the Commission nor UEI point to case law that a proposed combination may be dismissed simply because it is not the most "preferred, or most desirable combination." Indeed, the case law holds to the contrary. *See Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*, 713 F.3d 1369, 1376 (Fed. Cir. 2013).[7]

Instead, in a new argument, the Commission now argues that it weighed Dr. Russ's testimony against Dr. Rosenberg's testimony regarding IR blasters, and found Dr. Rosenberg more compelling. ITC Br. 56-58. But, in the Opinion, the Commission *did not* rely on Dr. Rosenberg's testimony regarding IR blasters to reject the Chardon-Mishra combination—it dismissed Dr. Russ's testimony solely

---

[7] The Commission attempts to distinguish *Bayer* on the grounds that the references disclosed "every limitation required by the asserted claims" and had an "express motivation to combine." ITC Br. 58. However, Roku simply cited *Bayer* for the principle that a combination need not be the "preferred, or most desirable combination" to render a claim obvious. *Bayer*, 713 F.3d at 1376. That principle is not limited to the facts of *Bayer*. *See, e.g.*, *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004).

because he admitted that IR blasters have "some advantages" and that the problems could be "alleviated" "through other means."  Appx30.  The motivation to combine analysis in the Opinion credited Dr. Rosenberg's testimony on only two issues: (1) the legally erroneous "fundamental tenet" issue (Appx29); and (2) that it would be "duplicative" and "wasteful" to add a second IR command path (Appx30)—neither of which is related to the Commission's new argument.  Thus, once again, this Court should reject the Commission's attempt to violate the *Chenery* Doctrine by engaging in post-hoc rationalizations.[8]

### C.    The Commission Failed to Correctly Apply this Court's Precedent Regarding the Nexus Requirement for Secondary Considerations

The Opinion wholly disregarded this Court's requirements that: (i) the presumption of nexus applies only when the product is *coextensive* with the claims; and (ii) secondary considerations must be driven by a *novel* aspect of the claimed invention in order to satisfy the nexus requirement.

---

[8] In any event, Dr. Rosenberg's testimony does not provide substantial evidence supporting the Commission's new argument because, other than his testimony about the "fundamental tenet" and "duplicative" component issues discussed above, he merely testified that: (i) he had not "seen" an "acknowledgment" "back in the time" that "IR blasters . . . aren't very good"; and (ii) he did not agree that IR blasters are an "eyesore."  Appx40420 (1241:2-9).  This did not address the substance of Dr. Russ's motivation-to-combine theory, and an express teaching is not required under *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

### 1. *The Commission Failed to Correctly Apply this Court's Precedent That a Nexus is Presumed Only When the Products are Coextensive with the Claims*

The Commission's brief fails to discuss the presumption of nexus or the coextensiveness requirement. The Commission merely repeats the error it made below by arguing that articles allegedly praising the invention are sufficient because "Samsung DI Products" "do practice the claimed invention." ITC Br. 64. But this Court's precedent requires more—"that the product is essentially the claimed invention," and that the invention is not "only a component" of the "machine or process." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373-74 (Fed. Cir. 2019). The Commission does not dispute that the claimed functionality is, at most, a component of the Samsung televisions.

UEI does not dispute that coextensiveness is legally required for a nexus to be presumed, and that the Opinion failed to perform any coextensiveness analysis. UEI instead contorts the Opinion, arguing that the Commission found that the objective evidence of non-obviousness was tied to *UEI's* "product" (*i.e.*, QuickSet)—not the Samsung televisions. UEI Br. 58. But the Commission never performed any coextensiveness analysis regarding QuickSet, and *Chenery* forbids now relying on new rationales. There is no doubt that the Commission's nexus conclusion was based on the Samsung televisions rather than QuickSet—its Opinion (Appx31) cited approvingly to FID pages 116-117 (Appx169-170), which expressly identified the

"Samsung TV" as the "first media device" and found that the articles "praised the Samsung TVs." Appx170. Moreover, as the Commission found (Appx156-158), and UEI itself admitted (Appx26797-26798, Appx26801-26802), QuickSet is software—not hardware—and thus cannot itself satisfy the "remote control" or "first media device" limitations of claim 1. Thus, QuickSet cannot be "coextensive" with any claim of the '196 patent.

### 2. *The Commission Failed to Apply this Court's Precedent That There Must Be a Nexus to the Novel Claim Elements*

Neither the Commission nor UEI dispute that the law requires that the nexus must be tied to the claim's *novel* aspects and that the Opinion failed to consider that requirement. Instead, the Commission argues that "Chardon—unlike the WSJ and CNET articles—does not disclose what is 'claimed and novel' about the invention, nor does it defeat UEI's secondary considerations of nonobviousness." ITC Br. 63. However, Roku never argued that Chardon disclosed what was "novel" about the '196 patent. Rather, Roku *quoted* from this Court's precedent that "[w]here the offered secondary consideration actually results from something *other* than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." Roku Br. 56-57 (citing *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011)).

Thus, a nexus exists only if the praise or other secondary considerations were directed to a novel claim limitation, *i.e.*, something that was not already disclosed in

a prior art reference, such as Chardon.   The Opinion identified only two claim elements missing from Chardon: (i) "a system configured to choose between two different control devices to transmit commands over different pathways," and (ii) "transmitting 'second data' to the remote control 'for use in configuring the remote control device to transmit' commands in the manner set forth in limitation 1[e]." Appx29.  However, the Commission failed to acknowledge the nexus requirement's novelty aspect, and did not analyze whether the secondary considerations were tied to those novel elements.   Appx31.   Indeed, the Commission's brief further demonstrates its misapprehension of this requirement.   The Commission now identifies statements of praise (*e.g.*, "seamlessly and relatively quickly," "seemed like cake," "pretty cool," etc.) in the articles that are directed to the overall process of configuring the television's control functionality (ITC Br. 61-62), and then identifies elsewhere in the articles statements that *mention*—rather than specifically praise—the fact that control can be over HDMI or via IR through the remote control (ITC Br. 61).  But this does not show that the praise was specifically tied to what was in the Samsung televisions, but absent from Chardon (*i.e.*, sending IR commands through a remote control rather than through an IR blaster).

UEI similarly misapprehends Roku's arguments,[9] asserting that "Roku first assumes that Chardon and Mishra leave no room for any novel elements." UEI Br. 60. However, Roku acknowledged that, in analyzing the nexus requirement's *novelty* aspect, it is appropriate to examine one reference at a time. Chardon discloses nearly every claim limitation and there was no evidence that any secondary considerations were tied to what is *novel* in the claims. Roku Br. 55-59; Appx27198-27200. UEI also argues that the Commission's findings of "substantial" differences between the prior art and the claims excuses the Commission's failure to address the nexus requirement's novelty aspect. UEI Br. 60. However, the nexus requirement's novelty aspect requires more than finding the prior art is different from the claims—it requires an analysis of the secondary considerations and a specific showing that they are tied to what is "both claimed and novel." *Huai-Hung Kao*, 639 F.3d at 1068. The Opinion did not identify anything praising the allegedly novel aspect of the '196 patent—the ability to send IR commands from the remote *as opposed to* from an IR blaster. Appx31, Appx169-171. Thus, the Opinion was both legally erroneous and not based on substantial evidence.[10]

---

[9] UEI also mistakenly states that "Roku's challenge concerns only the *presumption* of nexus." UEI Br. 59. UEI is incorrect. *Compare* Roku Br. 53-54 (presumption), *with* Roku Br. 55-61.

[10] Notably, the Commission and UEI fail to respond to Roku's arguments regarding the Commission's erroneous analysis of the alleged widespread adoption of QuickSet as another secondary consideration. Roku Br. 59-61. Since this error

## CONCLUSION

For the foregoing reasons and as set forth in the Opening Brief, Roku respectfully requests that this Court reverse the Commission's decision that (1) UEI established standing to assert the '196 patent, (2) UEI satisfied the domestic industry requirement, and (3) Roku did not show that the '196 patent is invalid as obvious.

Respectfully submitted,

/s/ *Matthew J. Rizzolo*

Jonathan D. Baker
DICKINSON WRIGHT RLLP
615 National Avenue, Suite 220
Mountain View, CA 94043
Phone:  (408) 701-6180

Michael D. Saunders
DICKINSON WRIGHT PLLC
607 W 3rd Street
Austin, TX 78703
Phone:  (512) 770-4208

Matthew J. Rizzolo
Brendan F. McLaughlin
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Phone:  (202) 508-4600

Andrew Thomases
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone:  (650) 617-4000

Matthew R. Shapiro
Michael A. Morales
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone:  (212) 596-9000

*Counsel for Roku, Inc.*

Dated: December 15, 2022

---

infected the Commission's secondary consideration analysis, this error alone justifies reversal.

# CERTIFICATE OF SERVICE

On December 15, 2022, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Matthew J. Rizzolo*
Matthew J. Rizzolo
*Counsel for Roku, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,961 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ *Matthew J. Rizzolo*
Matthew J. Rizzolo
*Counsel for Roku, Inc.*